NITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARTIN J. WALSH, SECRETARY
OF LABOR, UNITED STATES
DEPARTMENT OF LABOR,**

      **Plaintiff,**

v.

**AMERICARE HEALTHCARE SERVICES,
INC., et al,**

      **Defendants.**

Case No. 2:21-CV-5076
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly Jolson

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 17), Plaintiff's Memorandum in Opposition (ECF No. 18), and Defendants' Reply (ECF No. 21). For the reasons set forth above, the Court **DENIES** Defendants' Motion.

**I.**

Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor, filed this action against Defendants Americare Healthcare Services, Inc. ("Americare") and Dilli Adhikari, the owner of Americare. The Secretary alleges in his Amended Complaint that Defendants operate a domestic homecare business and that they willfully failed to pay overtime premium pay to their employees employed as direct care workers ("DCWs") or caregivers in violation of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 207, 211(c), 215(a)(2) and 215(a)(5). (Am. Compl., ECF No. 8.) The Amended Complaint further alleges Defendants violated the FLSA overtime provisions by paying DCWs at straight regular rates for overtime hours worked and manipulating employees' hourly rates by reducing such rates in workweeks in which DCWs worked

overtime such that the DCWs always received the equivalent of their typical straight hourly rates instead of a bona fide overtime premium rate.

In addition to the allegations regarding the overtime provisions, Plaintiff also alleges that Defendants violated the recordkeeping provisions of the FLSA. Specifically, Plaintiff avers that Defendants failed to make, keep, and preserve accurate records of employees' regular hourly rates of pay, total weekly straight-time earnings, and total weekly overtime premium pay. Finally, Plaintiff alleges that the violations were willful.

Defendants move for dismissal of the entire Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). That Motion is ripe for review.

## II.

In evaluating a complaint to determine whether it states a claim upon which relief can be granted, the Court must construe it in favor of the plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## III.

Defendants argue that this action should be dismissed because "the government's six-page complaint is comprised almost entirely of unsupported and conclusory allegations that Defendants violated the FLSA." (Def's Mot. to Dismiss at 1, ECF No. 14.) Below, the Court will address Plaintiff claims for (A) unpaid overtime and, (B) for failure to keep proper records.

2

**A.      Overtime**

To prevail at trial in an FLSA overtime suit, a plaintiff must prove, by a preponderance of the evidence, that he "performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, Pub. L. No. 80-49 § 4(a), 61 Stat. 86-87 (codified at 29 U.S.C. 254(a)), *as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27, 31 (2014)). "As the Supreme Court has noted, '[t]he remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee.'" *Moran v. Al Basit LLC*, 788 F.3d 201, 205 (6th Cir. 2015) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

Defendants specify that, "the Amended Complaint fails to plausibly allege that (1) the workers at issue in the case are Defendants' 'employees' under the FLSA; (2) there is enterprise or individual coverage under the FLSA; (3) the alleged FLSA violations were 'willful'; (4) Defendants engaged in recordkeeping violations; and (5) Mr. Adhikari may be held individually liable for the alleged FLSA violations."  (Defs' Mot. to Dismiss at 1–2, ECF No. 14.)

**1.      Workers at Issue and Mr. Adhikari's Individual Liability**

The Court first addresses the first and last of Defendants' contentions.  Defendants posit that the "Amended Complaint is virtually silent about the factors necessary for the 'economic realities test' for employment under the FLSA." (Defs' Reply at 3, ECF No. 21) (citing Pl's Mem. in Opp. at PageID 93-94, ECF No. 18).  Defendants continue, asserting that "[m]ost significantly, the Amended Complaint fails to allege facts showing how Defendants 'supervised and controlled' the workers."  *Id*. (citing *Rhea v. W. Tenn. v Violent Crime & Drug Task Force*, 825 F. App'x 272, 276 (6th Cir. 2020).

3

Defendants maintain that "*Iqbal* and *Twombly* require Plaintiff to plead some actual facts about the relevant context—some information about the working relationships and business operations of Defendants rather than labels and conclusions—that if true would establish an employment relationship between Defendants and the approximately 400 workers listed in "Exhibit 1" attached to the Amended Complaint." (Defs' Reply at 3–4, ECF No. 21; Defs' Mem. in Support of Mot. to Dismiss at 9, ECF No. 15.)  Defendants contend that "the Amended Complaint leaves entirely unexplained the crucial issue of supervision, which is a linchpin for Plaintiff's entire case.  All it offers is a single sentence alleging that Mr. Adhikari "directed employment practices" and "supervis[ed] employees."  (Am. Compl. at ¶ 4, ECF No. 7.)

In response, Plaintiff asserts that the Amended Complaint contains sufficient allegations to establish both Defendants are "employers" under the FLSA and that they "employ" "employees." (Pl's Mem. in Opp. at 9, ECF No. 18.)  This Court agrees.

First, Defendants argue that Plaintiff failed entirely to address the economic realities test even though he relied upon *Rhea*, a case decided on summary judgment that explains the economic realities test.  Plaintiff, however, cited to *Rhea* for the settled proposition that the FLSA's definition of "employer" is very broad—not for the proposition that the economic realities test must be met to survive a motion to dismiss.  (Pl's Mem. in Opp. at 8, ECF No. 18) ("The FLSA's definition of "employer" is broader than common-law agency.).

The law, as Defendants properly set out in their Motion, is "[w]hether someone is an 'employee' within the meaning of the FLSA is a fact-intensive inquiry focused on the 'economic realities' of the relationship." (Defs' Mem. in Support of Mot. to Dismiss at 9, ECF No. 15) (citing *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012) (reviewing an appeal of a decision made by the district court considering a summary judgment motion)).  This case, unlike *Rhea* and *Ellington*, is at the pleadings stage in a FLSA case where there is no fact intensive inquiry.

4

Instead, at this juncture, the Court must construe the Amended Complaint in favor of Plaintiff, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present any plausible claim.

Second, the case law is well settled as to the breadth of the definitions of "employer," "employee," and "employ," which are necessarily broad to effectuate the remedial purposes of the FLSA. *United States v. Rosenwasser*, 323 U.S. 360, 362-63 (1945); *Keller v. Miri Microsystems, Inc.*, 781 F.3d 799, 804 (6th Cir. 2015). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Under the FLSA, to employ means "to suffer or permit to work." 29 U.S.C. § 203(g).

The Sixth Circuit interprets the FLSA definitions broadly. *Salyer v. Ohio Bureau of Workers' Comp.*, 83 F.3d 784, 786 (6th Cir. 1996). This broad definition of employer means that, in addition to a corporate or other business entity, owners and officers may be "employers." *U.S. Dep't of Lab. v. Cole Enters., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995). Employers, including persons, can be held individually liable under the FLSA. *Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003). Additionally, the FLSA's definition of "'employee' is strikingly broad." *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1054 (6th Cir. 2019) (citing *Keller*, 781 F.3d at 804). It has been referred to as "the broadest definition that has ever been included in any one act." *Bechter v. Orion Utils., LLC*, No. 3:16-cv-252, 2016 WL 6662273, at *3 (S.D. Ohio 2016 Nov. 10, 2016) (quoting *U.S. v. Rosenwasser* 323 U.S. 360, 363 n.3 (1945)).

As for the allegations that support the employee/employer relationship and Mr. Adhikari as an employer, Defendants further argues that the Amended Complaint sets out mere conclusions of law. Plaintiff, however, alleges that Mr. Adhikari, as an officer and owner of Americare,

5

supervised employees, hired and fired employees, set their work schedules, and set their pay rates:

> Adhikari "directed employment practices within Ohio and has directly or indirectly acted in the interest of Americare in relation to its employees within Ohio at all relevant times herein, including supervising employees, hiring and firing employees, setting their work schedules, and setting their pay rates." Stipulated Am. Comp., ECF No. 8 at PageID 30, ¶ 4. The [Amended Complaint] alleges Adhikari was the owner of Americare and served as its Chief Executive Officer. *Id.* Therefore, any allegations of control over the employees can be imputed from him to Americare.
>
> The [Amended Complaint] also alleges Defendants paid a straight hourly rate, which is typical of an employment relationship and not indicative of the opportunity for profit and loss. *Id.* at PageID 31, ¶ 10. The [Amended Complaint] further alleges that Defendants made changes to DCWs' rates of pay over a period of time, indicating an ongoing relationship. *Id.*, at PAGEID 31-32, ¶¶ 10-12. In addition, the [Amended Complaint] alleges Defendants were engaged in "a domestic homecare business." *Id.* at PageID 30, ¶ 3. As such, the DCWs are integral to Defendants' business because they provide the actual services at the heart of Defendants' business. These allegations are sufficient to show an employment relationship between Defendants and the affected workers listed on Exhibit 1.

(Pl's Mem. in Opp. at 9–10, ECF No. 18.)

These factual allegations of supervision and other related control measures present a facially plausible claim because they allow this Court to draw a reasonable inference that both named defendants may be liable for the FLSA violations alleged.

### 2. Enterprise and Individual Coverage

The FLSA extends coverage to employees by two means: (1) the employee himself may be engaged in commerce or in the production of goods for commerce, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel ("individual" coverage),  29 U.S.C. § 207(a)(1)(1); or (2) the employee may be employed in an enterprise engaged in commerce or the production of goods for commerce ("enterprise coverage"), *s ee* 29 U.S.C. § 203(s)(1).  A plaintiff need only establish one or the other. *Id.*  Under § 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), an employee is covered by the enterprise test if the employee works for an enterprise

(a) that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (b) "whose annual gross volume of sales made or business done is not less than $500,000[.]" *Bey v. Walker HealthCareIT, LLC*, No. 2:16-cv-1167, 2018 WL 2018104, at *3 (S.D. Ohio May 1, 2018).

"[T]he test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Gulden v. Menages, Inc.*, No. 3:14-cv-1041, 2014 WL 4232791, at *3 (M.D. Tenn. Aug. 25, 2014) (quoting *Mitchell,* 362 U.S. at 324). "[A]ny regular contact with commerce, no matter how small, will result in coverage." *Id.* (alteration in original; citation omitted).

Defendants offer two arguments that they contend show that Plaintiff has failed to sufficiently allege either individual coverage or enterprise coverage. First, they contend that "direct care work" and "in-home caregiving" are "quintessentially local and intra-state in nature." (Defs' Mem. in Support of Mot. to Dismiss at 12, ECF No. 15.) Second, Defendants assert that Plaintiff "merely labels the[ employees as] 'direct care workers' or 'caregivers' in an attempt to establish that they fall within the ambit of Section 202(a)(5) of the FLSA, which is not sufficient to survive a motion to dismiss, and the analysis therefore need go no further." (Defs' Reply at 6, ECF No. 21.)

Plaintiff, however, points out that Defendants' citation to cases outside of the domestic service industry are inapposite and contrary to Congress's finding at 29 U.S.C. § 202(a). Plaintiff further highlights that § 2(a) states in pertinent part, "[t]hat Congress further finds that the employment of persons in domestic service in households affects commerce." 29 U.S.C. § 202(a). Domestic service, in turn, includes:

> The term domestic service employment means services of a household nature performed by an employee in or about a private home (permanent or temporary). The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers, handymen, gardeners, home health aides, personal care aides, and chauffeurs of automobiles for family use. This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3.

In reply, Defendants argue that § 202, cited above, is "*not* the standard for FLSA coverage, which is codified in § 207(a)(1), not § 202, and that requires actual participation in commerce" not just "affect[ing] commerce." (Defs' Reply at 6, ECF No. 21.)  Defendants continue, highlighting that the Supreme Court has noted that Congress did not intend to make the scope of the FLSA coextensive with its full power to regulate commerce.  *Id*. at 7 (citing *Mitchell*, 358 U.S. at 211).

While Defendants may be correct that Congress did not intend to make the scope of the FLSA coextensive with its full power to regulate commerce, the Supreme Court has consistently construed the Act "liberally to apply to the furthest reaches consistent with congressional direction," recognizing that broad coverage is essential to accomplish the goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency. *Tony & Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 296 (1985) (cleaned up and citations omitted; discussing enterprise coverage).  And as Plaintiff points out, other courts have found coverage in similar cases. *Franklin v. Jenn's Angels, LLC*, No. CV 21-399-SDD-SDJ, 2022 WL 69213, at *2 (M.D. La. Jan. 6, 2022); *Walsh v. Loving Kindness Healthcare Sys.*, LLC, No. 2:20-CV-1087-RJC, 2021 WL 2700852, at *1 (W.D. Pa. July 1, 2021).  Moreover, this Court has noted that "[c]ourts in this circuit have not required plaintiffs to allege [the enterprise coverage] element of a FLSA claim in detail." *Bey*, 2018 WL 2018104, at *4 (alternation in original)

8

(quoting *Simpson v. Baskin*, No. 3:17-CV-01077, 2018 WL 1070897, at *6 n.6 (M.D. Tenn. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1288908 (M.D. Tenn. Mar. 13, 2018)).

Thus, the Court finds that Plaintiff has sufficiently pleaded both individual and enterprise coverage under the FLSA.  Further, Plaintiff's allegations are sufficient for the Court to infer that the employees are employed in domestic service.  The Court, however, notes that whether an individual or enterprise is engaged in commerce under the FLSA is a "fact specific inquiry into the employment activities" of the employee.  *Hutchinson v. Honeymoon Corp.*, No. 5:16-CV-00018, 2017 U.S. Dist. LEXIS 208439, at *11–12 (N.D. Ohio Dec. 19, 2017).  As a sister district court explained, "[t]he issue of whether the requisite FLSA coverage actually applies to [the employees at issue here], particularly as the issue relates to the scope of 'commerce' under the FLSA, [it] is a legitimate question that will be the subject of appropriate discovery.  *Gulden v. Menages, Inc.*, 3:14-cv-1041, 2014 U.S. Dist. LEXIS 118804. *10–11 (M.D. Tenn. Aug. 25, 2014).

### 3. Willfulness

"An FLSA plaintiff generally has two years to file suit, but the statute of limitations increases to three years if the claim consists of a 'willful violation.'" *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012) (quoting 29 U.S.C. § 255(a)).  To establish willfulness, a plaintiff must demonstrate that the employer either knew or showed reckless disregard for whether its conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  A willful violation requires that the employer acted recklessly, at least; it is not sufficient that the employer acted unreasonably.  *Id*. at 135 n. 13.

Defendants argue that Plaintiff failed to plausibly plead any willful violation of the FLSA, stating:

> The closest the Amended Complaint comes to meeting this standard are the allegations that Defendants "knew or recklessly disregarded their [overtime pay] obligations" and "intentionally manipulated certain employees' regular rates to create the appearance of paying an overtime premium but in reality, paid them the same rate for all hours." Am. Compl. ¶ 12 (PageID 32).
>
> These alleged facts may be "consistent with [the] defendant's liability," *Iqbal*, 556 U.S. at 679, but they are conclusory and do not give rise to a plausible inference that Defendants knew that these adjustments were forbidden, rather than being based on a negligent or innocent belief that such adjustments were a permissible compliance strategy or a made out of a desire to make sure payments matched the government reimbursement rate for those hours.

(Defs' Mem. in Support of Mot. to Dismiss at 14, ECF No. 15.)

Defendant's arguments are better suited to the determination of whether there is a genuine issue of material fact regarding willfulness. That is, if Plaintiffs can support the allegation that Defendants manipulated certain employees' regular rates to create the appearance of paying an overtime premium, but in reality paid them the same rate for all hours, a jury could find (if it finds a violation) that the violation was willful. Contrarily, if Defendants put forth evidence to support that the adjustments were made negligently or under the innocent belief that such adjustments were a permissible compliance strategy or were made out of a desire to assure payments matched the government reimbursement rate for those hours, then a jury could find (if it finds a violation) that the violation was not willful. These are issues for another day. At this juncture, the Court must only determine whether the Secretary has sufficiently pleaded willfulness, which he has.

**B.     Recordkeeping**

Section 11(c) of the FLSA, 29 U.S.C. § 211(c), requires employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked. The burden is on the employer to keep accurate wage and time records. *Acosta v. Off Duty Police Services, Inc.*, 915 F.3d 1050, 1063 n.5 (6th Cir. 2019) (describing how burden-shifting under

10

the FLSA benefits employees when employer records are inaccurate or inadequate). "The obligation . . . is the employer's and it is absolute . . . ." *Id*. Under the applicable regulations, pay records must include, *inter alia*, regular hourly rates of pay, total weekly straight-time earnings, and total weekly overtime premium pay. 29 C.F.R. §§ 516.2(a)(6), 516.2(a)(8), 516.2(a)(9). Employers must maintain these records for at least three years. 29 C.F.R. § 516.5(a).

"A well-pleaded complaint need not include detailed factual matter or supporting evidence." *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 367 (6th Cir. 2019) (affirming district court's denial of motion to dismiss where complaint pled employer's unlawful payment scheme and resultant FLSA recordkeeping violations). Indeed, "[o]ne important reason that detailed factual allegations . . . are not necessary in the FLSA context, is that employment records concerning employees' compensation and schedules are generally in the control of the defendant-employer." *Perez v. Min & Kim Inc.*, No. 15-CV-14310, 2016 WL 2894504, *2 (E.D. Mich. May 18, 2016).

> Defendants contend that they are entitled to dismissal of this claim, arguing:
>
> The DOL's allegations of recordkeeping violations span a mere two paragraphs. The first is conclusory and insufficient to state a plausible claim.1 Erie Cty., Ohio, 702 F.3d at 867; Harris v. Jie, No. C13-877RSL, 2013 U.S. Dist. LEXIS 124819, at *6–7 (W.D. Wash. Aug. 30, 2013) (dismissing the DOL's claim for recordkeeping violations where the "allegations merely repeat the language of the FLSA and its corresponding federal regulations.").
>
> The second alleges recordkeeping violations that occurred "due to [Defendants'] practice of lowering employees' regular rates in overtime workweeks and paying employees straight time for overtime[.]" Am. Compl. ¶ 14 (PageID 32). In other words, this recordkeeping allegation is completely contingent on the claim that Defendants—through undescribed mechanisms and at unspecified times over a more than three-year period—committed FLSA overtime violations. As the DOL has not stated a claim for overtime violations, the recordkeeping claims too should be dismissed.

(Defs' Mem. in Support of Mot. to Dismiss at 15, ECF No. 15.)

Plaintiff responds that while the same alleged acts support both an overtime violation and a recordkeeping violation, the Amended Complaint sufficiently alleges an independent violation of the FLSA's recordkeeping requirements. This Court agrees.

The Court notes that the length of a complaint or a particular claim often has very little to do with whether it contains plausibly pleaded claims. In any event, the Amended Complaint here alleges that Defendants violated the recordkeeping provisions of the FLSA by lowering employees' regular rates in overtime workweeks and paying employees straight time for overtime. A reasonable inference is that the records are deceptive, and false, because they do not show the true regular rate of pay (*i.e.*, the amount the employee is paid per hour during a regular, non-overtime workweek), but rather a manipulated rate. 29 C.F.R. §§ 778.326, 778.500(b). Manipulating regular rates and paying straight time for overtime violates the requirement to accurately record regular hourly rates of pay, total weekly straight-time earnings, and total weekly overtime premium pay. 29 C.F.R. §§ 516.2(a)(6), 516.2(a)(8), 516.2(a)(9). This is sufficient for the recordkeeping violation claim to survive a motion to dismiss for failure to state a claim upon which relief can be granted.

## IV.

Based on the foregoing, the Court **DENIES** Defendants' Motion to Dismiss. (ECF No. 14.) This case remains open.

**IT IS SO ORDERED.**

**3/16/2023**                                             s/Edmund A. Sargus, Jr.
**DATE**                                                    **EDMUND A. SARGUS, JR.**
                                                            **UNITED STATES DISTRICT JUDGE**