**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARTIN J. WALSH,** | : | |
| Secretary of Labor, | : | |
| United States Department of Labor, | : | Case No. 2:21-cv-05076-EAS-KAJ |
| | : | |
| Plaintiff, | : | Judge Edmund A. Sargus, Jr. |
| | : | |
| v. | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| **AMERICARE HEALTHCARE** | : | |
| **SERVICES, INC., and DILLI ADHIKARI,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSES TO**
**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Through their counsel, Defendants Americare Healthcare Services, Inc. ("Americare") and Dilli Adhikari ("Adhikari") respectfully respond to Plaintiff's First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

Each response is subject to and incorporates the following general objections. The assertion of the same, similar, or additional objections, or a partial response to an individual interrogatory ("Discovery Request") does not waive these general objections.

1.  Defendants object to these Discovery Requests to the extent that they are overly broad or seek to impose burdens or obligations inconsistent with, or in excess of, those imposed by the Federal Rules of Civil Procedure, the Local Rules, or any other applicable rules and statutes. Defendants will respond to each Discovery Request in accordance with the requirements of the Federal and Local Rules.

4873-2634-8848 v1

2. Defendants object to these Discovery Requests to the extent that they seek information that is not relevant to the claims or defenses of any party to this litigation.

3. Defendants object to these Discovery Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, or immunity. No information subject to such privilege, protection, or immunity will be provided.

4. Defendants object to these Discovery Requests to the extent that they seek documents or information that Defendants previously provided during the wage and hour investigation.

5. The inadvertent disclosure by Defendants of information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege, protection, or immunity, shall not constitute a waiver by Defendants of such protection.

6. In response to these Discovery Requests, Defendants do not concede that any of the responses or information contained in them is relevant or admissible. Defendants reserve the right to object on the grounds of competency, privilege, relevance, materiality, or otherwise, to the use of this information for any purpose, in whole or in part, in this action or in any other action.

7. Defendants object to these Discovery Requests to the extent that they call for legal conclusions or otherwise attempt to re-cast legal issues as factual matters.

8. Defendants object to any Discovery Request that employs imprecise specifications of the information sought as vague and ambiguous.

9. Unless otherwise stated, Defendants will not provide any information encompassed by the foregoing objections.

10. The following responses reflect Defendants' present knowledge, information, and belief and may be subject to change or modification based on further discovery, or facts or circumstances,

4873-2634-8848 v1

which may come to Defendants' knowledge. Defendants specifically reserve the right to further supplement, amend, or otherwise revise their responses to these Discovery Requests.

11. Defendants incorporate the contact information of witnesses contained in the Defendants' Initial Disclosures.

## FIRST SET OF INTERROGATORIES

1. State and describe, in detail, Defendants' policies, practices, and procedures relating to compensation and pay policies (including but not limited to overtime) of employees (as defined herein) including the individual(s) responsible for establishing and implementing such policies, and stating the name, office address, and title of the person in charge of compensation during the Relevant Time Period.

**RESPONSE: Defendants object to this interrogatory as overly broad, vague, and unduly burdensome. Without waiving these objections, Defendants' initial practice was to pay the direct care workers a flat hourly rate for all hours worked. The amount of this flat hourly rate was based on the flat reimbursement rate set by the Ohio Department of Medicaid ("OH DM") and the private managed care organizations that contract with OH DM to administer the services available under Ohio's Medicaid waiver program. Adhikari purchased Americare from another owner. At the time he purchased the agency, the previous owner had been paying the care workers a flat hourly rate for all hours worked. Adhikari decided to continue paying the flat hourly rate once he became the owner.**

**Defendants then began to pay the direct care workers an hourly rate and pay time and one-half on the workers' regular rates for hours worked over 40 in a workweek. This described practice includes reducing the workers' hourly rates through wage adjustments to establish a new regular rate and then paying time and one-half overtime on that established**

3

**rate for hours worked over 40 in a workweek. Adhikari and Americare's Administrator Gopal Dhital were responsible for establishing and implementing this practice.**

**During the defined relevant time period, it has also been Defendants' practice to pay its office staff and non-direct care worker staff a salary. Adhikari was responsible for establishing and implementing this practice.**

2. Identify each person who is an owner/shareholder of Defendant Americare and the ownership/share of each person; each officer of Americare; and each member of the board of directors of Americare (if applicable).

**RESPONSE: Dilli Adhikari is the 100% owner of Americare. Dilli Adhikari is Americare's Chief Operating Officer. Americare's board members are Adhikari and Gopal Dhital.**

3. For each employee (as defined herein) (including but not limited to the individuals listed on Exhibit 1 of the Secretary's Complaint), describe the person's duties and compensation, including:

   a. Dates of employment.

   b. Job title.

   c. Description of duties performed.

   d. The basis upon which he or she was paid, *i.e.*, hourly rate, salary basis, commission, etc.

   e. The specific rate at which he or she was compensated, specifically indicating any and all changes in rate of compensation and the applicable dates.

   f. The hours worked during each workweek.

   g. The total compensation paid for each workweek.

   h. Whether the person was an employee or an independent contractor.

**RESPONSE:** Defendants object to this interrogatory as overly broad and unduly burdensome because of the substantial number of workers who have provided services through Americare during the defined relevant time period. For example, Plaintiff's Revised Exhibit 1 ("Exhibit 1") identifies around 800 individuals. Moreover, Plaintiff conducted an extensive investigation of Defendants and Defendants believe that Plaintiff is already in possession much of the information he claims to seek through this interrogatory. Defendants also object to the interrogatory as overly broad and unduly burdensome to the extent that it seeks information about individuals not identified in the Exhibit 1 and extends beyond any potentially applicable statute of limitations in the case. Defendants further object to this interrogatory because it seeks private and confidential information of individuals who are not parties to this litigation.

Without waiving these objections, Defendants anticipate that the payroll records they will produce in response to these requests list the workers' dates of employment, basis upon which they were paid, the rates at which they were paid, hours worked, and total compensation.

Regarding job titles, the individuals listed in Exhibit 1 have the title of Direct Care Worker or Personal Care Assistant. These titles are used interchangeably. These individuals provide in-home personal assistance services to individuals eligible to receive such services through Ohio's Medicaid waiver program. Personal assistance services consist of companionship, cooking, bathing, grooming, assisting with medications, and generally ensuring the consumers' safety and well-being. The care workers are on Americare's payroll as employees. However, for the reasons stated in the response to Interrogatory No. 8, the care workers are effectively independent contractors and/or not Defendants' "employees"

5

**under the FLSA because of Defendants' lack of control over the workers' assignments, schedules, duties, and hours worked.**

4. Describe in detail Defendant Americare's management structure and the process by which decisions regarding Defendant Americare's employment practices were made and implemented.

**RESPONSE: Defendants object to this interrogatory as overly broad, unduly burdensome, and vague. Without waiving these objections, Americare's management consists of its President, Adhikari, and its Area Managers, Prakash Mishra, Chandra Parajuli, Kishor Gajmer, and Rup Bharati. Adhikari makes decisions regarding Americare's employment practices by meeting and consulting with the Area Managers. Adhikari then makes decisions regarding the employment practices based on the input he receives from the Area Managers. Adhikari then instructs the Area Managers to implement his decisions regarding Americare's employment practices as they deem appropriate.**

5. Identify all persons responsible for the day-to-day management and operation of Defendant Americare and its employment practices, including the following:

   a. hiring/firing employees.

   b. setting employees' rates of pay.

   c. setting employees' work schedules.

   d. disciplining employees.

   e. deciding whether employees are paid an overtime premium.

   f. deciding whether employees are exempt from the Act's minimum wage and/or overtime requirements.

   g. deciding what deductions may be taken from employees' wages.

**RESPONSE:** Defendants object to this interrogatory as overly broad, unduly burdensome, and vague. Without waiving these objections, the Area Managers, Prakash Mishra, Chandra Parajuli, Kishor Gajmer, and Rup Bharati, are responsible for hiring and firing office staff. The Area Managers are also responsible for placing the care workers on Americare's payroll. However, the decision to hire and fire the care workers is the responsibility of the consumers. The consumers select their caregivers. Americare merely accepts the consumers' decisions with regard to hiring and firing of the care workers.

The Area Managers are responsible for setting the pay rates for the employees and care workers.

The Area Managers are responsible for setting the work schedules for the office staff. The third-party service coordinators and consumers set the care workers' work schedules.

The Area Managers are responsible for disciplining office staff. The consumers are responsible for disciplining the care workers.

Adhikari and Administrator Gopal Dhital are responsible for deciding whether employees and care workers are paid an overtime premium, deciding whether employees and care workers are exempt from the Act's minimum wage and/or overtime requirements, and deciding what deductions may be taken from wages.

6. State and describe, in detail, Defendants' policies, practices, and procedures relating to recordkeeping/timekeeping of hours worked by employees (as defined herein) during the Relevant Time Period, including the name of software, operating systems, and/or third-party companies used to collect, store, access, or retrieve time records; functioning of any timekeeping system that captures information regarding the hours worked, including recorded compensation due or received for any overtime worked; the name and office

location of the department or operational unit responsible for timekeeping, and stating the name, office address, and title of the person in charge of timekeeping.

**RESPONSE: Defendants object to this interrogatory as overly broad, unduly burdensome, and vague. Without waiving these objections, Defendants have used template timesheets to track the hours worked by the care workers. (Americare 000001 – Americare 000003). The workers complete these template timesheets by recording their hours worked and the type of services provided. The consumers signed or initialed the timesheets to indicate that the form was completed accurately. The workers submitted the completed timesheets to Americare. Americare then submitted the units or hours worked to the private managed care organizations for reimbursement. Americare would also enter the hours worked into third-party Automatic Data Processing, Inc.'s ("ADP") software for processing in accordance with ADP's policies, practices, and procedures.**

**Ohio and the private managed care organizations also require the workers to track their time and services in an electronic visit verification ("EVV") system pursuant to Section 12006 of the 21st Century CURES Act. Americare uses Sandata Technologies, LLC as its EVV software system. The care workers directly access the EVV system on their personal electronic devices through the third-party vendor's software application. The workers still use the template timesheets if they do not successfully enter their time and services into Sandata's system. Regardless of whether the workers use the template timesheets or the EVV system to log their services, Americare enters hours worked and pay information into ADP for payroll processing.**

7.  Describe in detail all facts that support any contention by Defendants that any individual listed on Exhibit 1 of the Secretary's Complaint was paid overtime in accordance with the Act.

**RESPONSE:** Defendants object to this interrogatory as overly broad and unduly burdensome. Without waiving these objections, Defendants contend that the individuals listed in Exhibit 1 were not their "employees," as that term is defined in the FLSA, because Defendants do not have sufficient control over those individuals. The consumers select the individual that they want to provide the care services. Third party service coordinators determine the type and duration of the services that must be provided to the consumers. The consumers also further direct the individuals in providing the services authorized by the service coordinators. As a result of Defendants' lack of control over the selection and assignment of the individuals listed in Exhibit 1 and their hours worked, these individuals are not Defendants' "employees" under the FLSA. Since the workers are not Defendants' "employees,", Defendants had no legal obligation to pay them overtime in accordance with the FLSA.

Even assuming the individuals were Defendants' "employees," it is Defendants' contention that all of the individuals are or should be found by the Court to be exempt from overtime premium pay pursuant to the plain language of the FLSA's companionship (29 U.S.C. § 213(a)(15)) and live-in (29 U.S.C. § 213(b)(21)) overtime exemptions, as evidenced by the position taken by the Department of Labor in other lawsuits. *See* United States' *Amicus Curiae* Brief, *Long Island Care at Home Ltd. v. Coke*, Docket No. 06-593 (U.S. 2007) (acknowledging that the "DOL decided that *all* third-party employment, without regard to the employer's status as a covered enterprise, should be included within the scope of the companionship services exemption."). Therefore, Defendants still had no obligation to pay them overtime in accordance with the FLSA.

Additionally, Defendants contend that they have paid the individuals overtime in accordance with the FLSA. Defendants paid this overtime premium as a precautionary practice and to limit their liability in the event that the Court determined that the individuals were Defendants' non-exempt employees. The information in the provided payroll records supports this contention.

8. Describe in detail the factual basis for any contention by Defendants that any person listed on Exhibit 1 of the Secretary's Complaint was not an "employee" within the meaning of the Act.

**RESPONSE**: Defendants object to this interrogatory as overly broad and unduly burdensome. Without waiving these objections, Defendants contend that the individuals listed in Exhibit 1 are not Defendants' "employees" within the meaning of the FLSA because Defendants do not have sufficient control over those individuals. The consumers or their representatives demand that a certain individual provide the assistance services. If Americare does not accept this demand, then the consumers will go to another agency. Therefore, Defendants lack control over the selection and assignment of the caregivers. Third-party service coordinators also assess the consumers' needs and draft a service plan that sets the type and duration of services each consumer must receive. Defendants have no authority to modify the service schedule set by the service coordinators. Therefore, Defendants also lack control over the caregivers' schedules and how many hours they work. Because Defendants lack control over the assignment of the caregivers, their schedules, and their hours worked, the individuals listed in Exhibit 1 are not their "employees" under the FLSA.

9. Explain what records of hours worked by, and compensation paid to, Defendants' employees (as defined herein) Defendants created and maintained during the Relevant Time Period, and

all efforts, methods or practices by Defendants to keep track of, ascertain, and record hours worked by and compensation paid to Defendants' employees during the Relevant Time Period, and identify employees for whom such records were not maintained.

**RESPONSE: Defendants object to this interrogatory as overly broad, unduly burdensome, and vague. Without waiving these objections, Defendants use template timesheets to track the hours worked by the workers. (Americare 000001 – Americare 000003). Americare's human resources department retains copies of the completed template timesheets.**

**Defendants also use the Sandata EVV system required by Ohio and the private managed care organizations to track the hours worked. The workers use the template timesheets if they do not successfully enter their time and services into Sandata's system. The Sandata system stores the information related to the hours worked and services provided in accordance with its policies and procedures.**

**Regardless of the method used for recording the hours worked, Americare enters the number of hours worked into ADP for processing. This information is stored for 3-years in accordance with ADP's policies, practices, and procedures.**

**Other than payroll records older than 3-years, which were automatically discarded in accordance with the law and the Labor Department's regulations, Defendants are not aware of any records showing hours worked within the last 3-years that were not maintained.**

10. Detail, including your methods of calculations, how the overtime pay for each employee (as defined herein) complies with the FLSA during the Relevant Time Period.

**RESPONSE: Defendants object to this interrogatory as overly broad and unduly burdensome. Without waiving these objections, for the reasons stated in the responses to Interrogatories Nos. 7 and 8, which Defendants incorporate into this response, the workers**

11

at issue in this matter are either not Defendants' "employees" under the FLSA or are or should be found by the Court to be exempt from the FLSA's overtime requirements pursuant to the companionship and live-in exemptions. Consequently, Defendants were under no legal obligation to pay the workers at issue in this matter an overtime premium or calculate overtime pay for them in a way that complied with the FLSA. However, as a precautionary practice aimed at limiting their liability if it is determined that the workers at issue in this matter are Defendants' non-exempt employees, Defendants have paid the workers an overtime premium. Defendants calculate this overtime premium by multiplying the workers' hourly rates by 1.5 and paying them one and one-half times their regular hourly rate for hours worked over 40 in a workweek. This described practice includes reducing the workers' hourly rates through rate adjustments to establish a new regular rate and then paying time and one-half overtime on that established rate for hours worked over 40 in a workweek. This practice complies with the FLSA as courts have recognized that employers and employees are permitted to establish the regular rate at any point in time and in any manner that they see fit. *Walling v. Youngerman-Reynolds Hardwood Co, Inc.*, 325 U.S. 419, 424 (1945). Courts have also recognized that an employer can comply with the FLSA by reducing the "regular" wage paid to its employees and pay overtime at one and one-half times the reduced regular rate such that the total pay to the employees remains the same. *Conner v. Celanese, Ltd.*, 428 F. Supp. 2d 628, 637 (S.D. Tex. 2006). The Department of Labor has itself even acknowledged in court filings in other lawsuits that rate reductions are permissible under the FLSA. *See Amicus Curiae* Brief, Secretary of Labor (*Parth v. Pomona Valley Hosp. Med. Ctr.*, 2010 U.S. 9th Cir. Briefs LEXIS 119, p. 2). Accordingly, Defendants overtime premium pay calculation complies with the FLSA even where the workers' hourly rates had been reduced.

11. If Defendants contend that a credit should be given for payments made to Defendants' employees (as defined herein) during the Relevant Time Period, and those credits should offset any compensation that the Secretary now claims in this lawsuit is owed to Defendants' employees, describe all facts and legal arguments supporting this position.

**RESPONSE: Defendants object to this interrogatory as overly broad and unduly burdensome. Without waiving these objections, for the reasons stated in the response to Interrogatory No. 8, which Defendants incorporate into this response, it is Defendants' position that none of the individuals for whom Plaintiff seeks compensation is Defendants' "employees" under the FLSA because of Defendants' lack of control over the workers' assignments, schedules, duties, and hours worked. Since these workers are not Defendants' "employees" under the FLSA, Defendants were under no federal legal obligation to pay them an overtime premium. Therefore, Defendants are entitled to a "credit" that completely offsets all the compensation that Plaintiff claims to be owed to these workers.**

**It is also Defendants' position that the individuals for whom Plaintiff seeks compensation are subject to the companionship (29 U.S.C. § 213(a)(15)) and live-in (29 U.S.C. § 213(b)(21)) exemptions to the FLSA's overtime requirements. Consequently, Defendants had no legal obligation under the FLSA to pay these workers an overtime premium, even if these individuals were Defendants' FLSA "employees." Because these workers are or should be found by the Court to be exempt from the FLSA's overtime requirements, Defendants are entitled to a credit that offsets all compensation Plaintiff claims to be due.**

**Additionally, and as explained in the response to Interrogatory No. 10, which Defendants incorporate into this response, Defendants have been paying overtime to the**

**individuals for whom Plaintiff seeks compensation. Therefore, if it is determined that the individuals are Defendants' non-exempt FLSA employees, then Defendants are entitled to a credit that offsets all compensation Plaintiff claims to be due when proper overtime was paid.**

12. If you contend the individuals listed in Exhibit 1 attached to Plaintiff's Complaint are not owed back wages, identify which individuals are not owed the back wages and what exemptions are claimed for each individual.

**RESPONSE: Defendants object to this interrogatory as overly broad and unduly burdensome. Without waiving these objections, for the reasons stated in the response to Interrogatory No. 11, which Defendants incorporate into this response, Defendants contend that they do not owe back wages to any of the individuals listed in Exhibit 1 because they are either not Defendants' "employees" under the FLSA or they are or should be found by the Court to be exempt from the FLSA's overtime requirements pursuant to the companionship and live-in exemptions. However, if it is determined that the individuals are Defendants' non-exempt FLSA employees, then it is Defendants' contention no individual is entitled to any back wages in instances where an overtime premium was paid.**

13. If you contend the individuals listed in Exhibit 1 attached to Plaintiff's Complaint are owed back wages, identify which individuals are owed back wages, the amount of back wages the individual(s) are owed, and the method of calculation used for determining the back wages owed.

**RESPONSE: For the reasons explained in the responses to Interrogatories Nos. 11 and 12, which Defendants incorporate into this response, it is Defendants' contention that they do not owe back wages to any of the individuals listed in Exhibit 1 because they are either not Defendants' "employees" under the FLSA or they are or should be found by the Court to be**

exempt from the FLSA's overtime requirements pursuant to the Act's companionship and live-in exemptions.

14. Provide the name, job title, supervisor, work address, last known address, last known telephone number, and last known email address of all Defendants' employees (as defined herein) from January 1, 2017 through the present.

**RESPONSE: Defendants object to this interrogatory as overly broad and unduly burdensome because of the substantial number of workers who have provided services through Americare during the defined relevant time period. For example, Plaintiff's Exhibit 1 identifies approximately 800 individuals. Moreover, Plaintiff conducted an extensive investigation of Defendants and as a result of which Defendants believe that Plaintiff is already in possession of the information sought through this interrogatory. Defendants also object to the interrogatory as overly broad and unduly burdensome to the extent that it seeks information about individuals not identified in the Exhibit 1 and extends beyond any potentially applicable statute of limitations in the case. Defendants further object to this interrogatory because it seeks private and confidential information of individuals who are not parties to this litigation. Without waiving these objections, Defendants state that they anticipate that the forthcoming payroll records will include the names and addresses of the workers. Defendants are also willing to take reasonable efforts to assist Plaintiff in obtaining the requested information of a particular worker or smaller number of workers identified in the Exhibit 1.**

15. Prior to learning of the U.S. Department of Labor's investigation relating to this matter, did Defendants ever take any steps to determine whether their policy relating to compensation of employees (as defined herein) complied with the Fair Labor Standards Act?  If your answer is

yes, describe in detail all actions taken to determine whether the policy was in compliance, identify all persons who were consulted regarding whether the policy was in compliance, and the date of all such actions.

**RESPONSE:** **Defendants object to this interrogatory as overly broad and unduly burdensome. Defendants also object to this interrogatory to the extent that it seeks attorney-work product and other information protected by the attorney-client privilege. Without waiving these objections, prior to learning of the U.S. Department of Labor's investigation relating to this matter, Defendants consulted with the law firms of John Linkosky & Associates and Greg Castelli & Associates regarding whether their compensation practices complied with the FLSA.**

16.  Identify the individual(s) responsible for assigning work, scheduling work, and/or supervising the work of the individuals listed in Exhibit 1 attached to Plaintiff's Complaint during the Relevant Time Period.  For each individual, provide their name, the name of their employer, job title, work address, work telephone number, last known home address, last known home telephone number, last known mobile telephone number, last known personal email address, and the name of the individual listed in Exhibit 1 attached to Plaintiff's Complaint for whom he or she is responsible for assigning work, scheduling work, and/or supervising.

**RESPONSE:** **Defendants object to this interrogatory as overly broad, unduly burdensome, and vague. Without waiving these objections, the third-party service coordinators determine the amount and type of services the consumers receive. The consumers then identify the person they would like to provide the services authorized by the service coordinators. The consumers typically identify a family member to provide the services. The consumers then further direct the caregivers to provide the services in the manner they like. The individuals**

**in Exhibit 1 are the caregivers identified by the consumers. Therefore, it is the service coordinators who are responsible for scheduling the work for these individuals and ensuring that the caregivers receive the services they authorize. The consumers are responsible for assigning the work. Americare's Area Managers, Prakash Mishra, Chandra Parajuli, Kishor Gajmer, and Rup Bharati, are responsible for placing the consumers on Americare's payroll so that the selected caregivers can be paid for their services through Ohio's waiver program. The Area Managers may be contacted through Defendants' counsel.**

17. Identify all persons who have knowledge relating to the various subject matters, averments, claims or defenses of this lawsuit, describing generally the knowledge possessed or claimed to be possessed by each such individual during the Relevant Time Period.

**RESPONSE: Defendants object to this interrogatory as overly broad and unduly burdensome. Defendants also object to this interrogatory to the extent that it seeks attorney-work product and other information protected by the attorney-client privilege. Defendants further object to this interrogatory as premature because discovery in this matter is ongoing and Defendants are in the process of identifying all persons who may have knowledge of the various subject matters, averments, claims, or defenses in this lawsuit.**

**Without waiving these objections, Dilli Adhikari, Americare's CEO, is believed to have knowledge relating to the operations of Americare; Americare's pay practices with respect to the individuals identified in the Exhibit 1 and the other direct care workers that provided care services through Americare; the hours worked by the direct care workers; and the direct care workers' job duties and how and why they are assigned to certain care recipients.**

Gopal Dhital, Americare's State Administrator, is believed to have knowledge relating to Americare's operations; the hours worked by the direct care workers; and the direct care workers' job duties and how and why they are assigned to certain care recipients.

Keshav Acharya, Americare's Human Resources Director, is believed to have knowledge relating to the placement of the direct care workers on Americare's payroll and the rates paid to the direct care workers.

Rup Bharati, Americare's Area Manager, is believed to have knowledge relating to the services the service coordinators and the managed care organizations require the direct care workers to provide.

Jamuna Kadrya, Americare's Director of Nursing, is believed to have knowledge relating to the duties performed by the direct care workers.

The individuals identified in Exhibit 1 are believed to have knowledge relating to their hours worked; job duties; how their duties and hours are determined; rates of pay for performing their duties; and how and why they are assigned to the care recipients.

Plaintiff's investigator or investigators are believed to have knowledge relating to Defendants' payroll practices; information learned during interviews with the direct care workers; the direct care workers' duties and assignments; and the direct care workers' rates of pay.

Any other individuals identified in Defendants' and/or Plaintiff's discovery responses and initial disclosures may also have information relating to the various subject matters, averments, claims, or defenses in this lawsuit.

18. With respect to each individual whom Defendants intend on calling as a witness at the trial of this cause, please state the following:

    a.   The name of such person;

    b.   The address and telephone number of such person;

    c.   A summary of the testimony expected to be elicited from such person; and

    d.   Each document or other item of evidence you expect to prove through such witness.

**RESPONSE: Defendants object to this interrogatory as overly broad, unduly burdensome, and outside the scope of Fed. R. Civ. P. 26. Defendants also object to this interrogatory to the extent that it seeks attorney-work product and other information protected by the attorney-client privilege. Defendants further object to this interrogatory as premature. Defendants will provide responsive information when and to the extent that the Court requires them to provide the information.**

19. Describe separately and in detail (identifying where applicable, any and all documents used in answering this inquiry or which relate to or provide support for any affirmative defense) each and every factual basis you rely upon in support of any affirmative defense Defendants will raise.

**RESPONSE: Defendants object to this interrogatory as overly broad and unduly burdensome and to the extent that it seeks attorney-work product or other information protected by the attorney-client privilege. Defendants also object to this interrogatory as premature because Defendants have not yet been required to answer Plaintiff's Complaint or assert any affirmative defenses. Accordingly, there are no such factual bases to describe at this time.**

20. For each Request for Admission that was answered with a partial or complete denial, provide all facts supporting each denial.

**RESPONSE**: Defendants object to this interrogatory as overly broad and unduly burdensome. Without waiving these objections, please see Defendants' responses to Plaintiff's Request for Admissions, which state the facts supporting the denials.

Respectfully submitted,

Dated: September 2, 2022

*/s/ Michael E. Hooper*
Michael E. Hooper (0073188)
Trial Attorney
OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
525 William Penn Place, Suite 1710
Pittsburgh, PA 15219
412-566-1500 (phone)
412-281-1530 (fax)
michael.hooper@obermayer.com

*Counsel for Defendants*

4873-2634-8848 v1

## **VERIFICATION**

I, Dilli Adhikari, Chief Operating Officer of Americare Healthcare Services, Inc., verify that I have personal knowledge of the statements of fact contained in the responses to Plaintiff's First Set of Interrogatories. I further certify that the factual averments within the responses are accurate and true and are made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn declarations under the penalty of perjury.

Dated: 09/01/2022

Dilli Adhikari

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of Defendants' Responses to Plaintiff's First Set of

Interrogatories were served upon the following by electronic mail on September 2, 2022:

Rina R. Russo, Esq.
Russo.Rina.R@dol.gov

Respectfully submitted,

*/s/ Michael E. Hooper*
Michael E. Hooper (0073188)
Trial Attorney

4873-2634-8848 v1