IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, U.S. Department of Labor, *Plaintiff*, v. AMERICARE HEALTHCARE SERVICES, INC., and DILLI ADHIKARI, *Defendants*. | CA No. 2-21-cv-05076-EAS-KAJ<br>Judge Edmund A. Sargus, Jr.<br>Mag. Judge Kimberly A. Jolson |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

COMBINED TABLE OF CONTENTS AND SUMMARY OF THE ARGUMENT......... i

ARGUMENT .................................................................................................................... 1

I.    DOL's Rule Excluding Third-Party Employers from the Live-In Exemption Is Unlawful ................................................................................................................. 1

     A.    DOL misunderstands *Loper Bright* ................................................................ 3

     B.    *Coke* is inapplicable to the live-in exemption ................................................ 7

II.   DOL's Rule Excluding Third-Party Employers from the Companionship Exemption Is Unlawful ................................................................................................................. 9

     A.    The companionship exemption is not a blank check ..................................... 9

     B.    DOL's rule violates the "major questions" doctrine .....................................11

III.  DOL's Rule Excluding "Care" from the Companionship Exemption Is Unlawful ..13

IV.  DOL's Rule Is Arbitrary and Capricious ............................................................. 15

CONCLUSION ............................................................................................................. 16

# COMBINED TABLE OF CONTENTS AND SUMMARY OF THE ARGUMENT

Pursuant to Local Rule 7.2(a)(3), Defendants provide the following combined table of contents and concise summary of the argument.

The Fair Labor Standards Act ("FLSA") does not require overtime pay for (1) "any employee who is employed in domestic service in a household and who resides in such household," 29 U.S.C. § 213(b)(21); or for (2) "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves," *id.* § 213(a)(15). But, according to the Department of Labor ("DOL"), its general rulemaking authority and authority to "define and delimit" the terms of the companionship exemption allow it to carve out an entire class of employers from both exemptions. DOL is wrong. "Any employee" means "any employee," regardless of who the employer is.

DOL's response does not provide any basis for in law or binding precedent for departing from the FLSA's text. Specifically:

**I.A.** DOL does not explain how the live-in exemption, 29 U.S.C. § 213(b)(21), can be squared with DOL's rule prohibiting disfavored third-party employers from invoking the live-in exemption. Instead, DOL asks for deference. But DOL's request for judicial deference runs headlong into *Loper Bright*. Under *Loper Bright*, a general grant of rulemaking authority no longer confers interpretive authority over ambiguous terms, and that is all that DOL can point to for the live-in exemption. The Court's duty, then, is to give the live-in exemption its best reading. On DOL's contrary view, *Loper Bright*'s overruling of *Chevron* changed nothing. That cannot be right.

i

**I.B.** *Loper Bright* confirms that the reasoning of *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007), concerning the companionship exemption, should not be *extended* to a different exemption with no specific delegation of definitional authority. DOL provides no good reason to extend *Coke*'s reasoning beyond the companionship exemption it interpreted. None exists.

**II.A.** DOL's rule excluding third-party employers from the companionship exemption exceeds the scope of DOL's definitional authority. DOL is permitted to define "terms"; it doesn't get to write new terms. That is what DOL did here. Instead of defining terms, DOL engaged in pure *ipse dixit*; it never tried to *define* the only potentially relevant *term*—"domestic service employment"—in a consistent or logical way.

**II.B.** By excluding third parties from the companionship exemption, DOL also claims the extraordinary power to dramatically restructure the entire $66 billion homecare industry while working around the congressional process. That is of major economic and political significance. The major-question doctrine applies here.

**III.** DOL's decision to define "companionship" to exclude all non-incidental "care," 29 C.F.R. § 552.6, contradicts the ordinary meaning of the term "companionship services" as that term was understood in 1974, and defeats the manifest purpose of the exemption. DOL counters with dubious arguments from legislative history, but these arguments undermine its new definition.

**IV.** DOL's rule is also arbitrary. DOL ignored the likelihood that home care agencies would respond to overtime liability but cutting paid hours. DOL's response merely shows that it "acknowledged the concern and moved on." *Louisiana v. DOE*, 90 F.4th 461, 473 (5th Cir. 2024). That is insufficient.

ARGUMENT

I. **DOL's Rule Excluding Third-Party Employers from the Live-In Exemption Is Unlawful**

DOL says very little about the live-in exemption, an exemption that could be dispositive here for many, if not most, workers. There is a reason for that. The text, structure, and history of the FLSA show the live-in exemption covers "any employee" who lives in the household where the employee provides domestic services, "without regard to the identity of the employer." Wage & Hour Advisory Mem. No. 2005-1 (Dec. 1, 2005); ECF113-2, at 9-14. DOL agrees. ECF114, at 4 ("The 1974 Amendments also exempted from the Act's overtime requirements any domestic service employee who lives in the household."). DOL's rule purports to prevent third-party employers from invoking the live-in exemption. 29 C.F.R. § 552.109(c). Under the best reading of the live-in exemption, however, DOL's rule cannot survive.

DOL does not grapple with the text. It does not attempt to offer any reading, let alone a "best reading," except in a breezy footnote. ECF114, at 16 n.7. There's a reason for that. In that footnote, DOL claims that it has the best reading of both exemptions not because of anything in their text, but because it thinks the plain text of the statute would lead to absurd results. Specifically, it says that a plain reading (which DOL itself held to for decades) would mean that some employers covered before the 1974 Amendments would no longer be covered, and Congress, it says, surely could not have intended that. *Id.* That argument from purpose at most supports a rule excluding employers that would have been covered before the 1974 Amendment from the live-in exemption, not a rule excluding *all* third-party employers from that exemption. And, in any event, the Supreme Court did not "find these arguments convincing" when analyzing the companionship exemption. *Coke*, 551 U.S. at 167. They are

1

less convincing as to the live-in exemption. Congress does not pursue a legislative purpose "at all costs." *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018). And part of Congress's purpose was to ensure that the FLSA did not reach too far—that is why it included these exemptions. Previously, DOL argued that these exemptions should still be read narrowly or, at least, that it was reasonable to do so. But with *Chevron* gone, both DOL and this Court "have no license to give [an] exemption anything but a fair reading." *Id.*

With nothing to offer on the text, DOL requests reflexive deference to its view of what class of employers should be eligible to claim the live-in exemption. ECF114, at 16, 18-19. Deference, DOL claims, follows from *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, which involved a different (and differently written) exemption—the companionship exemption. But "*Chevron* is overruled." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). The Court must "determine the best reading of the statute," and construe the provision as "if no agency were involved." *Id.* at 2266. The Court may not interpret the exemption "under the now-*ancien régime* that *Chevron* imposed." *Rest. L. Ctr. v. DOL*, No. 23-50562, 2024 WL 4609380, at *4 (5th Cir. Aug. 23, 2024) (reviewing FLSA rule without deference in light of *Loper Bright*).

DOL's request for deference as to the live-in exemption therefore does not survive *Loper Bright*. Its argument to extend *Coke* to the live-in exemption, too, cannot survive *Loper Bright*. In short, after *Loper Bright*, neither deference nor *Coke* can save DOL's rule about the live-in exemption.

2

### A. DOL misunderstands *Loper Bright*

DOL argues that deference on the live-in exemption would be consistent with *Loper Bright*. DOL points out that § 29(b) in the 1974 FLSA amendments authorized DOL to "prescribe necessary rules, regulations, and orders with regard to the" 1974 domestic service amendments, Pub. L. No. 93-259, § 29(b), 88 Stat. 55, 76 (29 U.S.C. § 202 (note)); *see* ECF114, at 18-19. DOL claims that this is "one of several types of delegations that *Loper Bright*" says still requires deference, even after *Chevron*'s demise. ECF114, at 18-19.

Not so. Start from the basics. A general grant of rulemaking authority, such as Section 29(b), was a *prerequisite* for *Chevron* even to apply. "*Chevron* applie[d] only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law.'" *Loper Bright*, 144 S. Ct. at 2268. Such "a grant of general rulemaking authority can show only Congress's *implied* delegation to an agency to resolve ambiguities under *Chevron*." *Gun Owners of Am., Inc. v. Garland*, 19 F.4th 890, 918-19 (6th Cir. 2021) (en banc) (Murphy, J., dissenting) (equally divided court).

*Chevron* itself distinguished general delegations of authority to administer a statute from situations where "there is an express delegation of authority to the agency to elucidate *a specific provision* of the statute by regulation." *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843-44 (1984) (emphasis added). Before *Chevron*, courts already read those specific delegations to confer administrative agencies a degree of discretion. *See Batterton v. Francis*, 432 U.S. 416, 425 (1977) (express authority to define "unemployment"). *Chevron* was controversial because it presumed that a general grant of rulemaking authority could alone delegate interpretive authority whenever Congress "was silent or ambiguous with respect to the specific issue." *Loper Bright*, 144 S. Ct. at 2264 (cleaned up). That was "a fiction," *id.* at 2268, and one that

3

clashed with the Administrative Procedure Act ("APA"), and a long tradition of judicial review, *id.* at 2262.

After *Loper Bright*, the fiction is out, and de novo judicial review of questions of law is in. Congress may "empower an agency to prescribe rules to fill up the details of a statutory scheme." *Id.* at 2263 (cleaned up). But "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress." *Id.* Although "'DOL is authorized to promulgate rules interpreting and clarifying the FLSA,'" under the APA, courts may not defer to DOL's view of the best meaning of the statute. *See Rest. L. Ctr.*, 2024 WL 4609380, at *1, *4. This is precisely what DOL did back in 1974.

Consistent with the caselaw that preceded *Chevron*'s fiction, *Loper Bright* acknowledges that a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion." 144 S. Ct. at 2263. But *Loper Bright* explains when that might be so with very precise examples. *Id.* After *Loper Bright*, there are two categories of express delegations that authorize "a degree of discretion," neither of which turns upon a bare grant of general rulemaking authority.

First, "some statutes 'expressly delegate[ ]' to an agency the authority to give meaning to a particular statutory term." *Id.* (quoting *Batterton*, 432 U.S. at 425). There, *Loper Bright* cites as examples the companionship exemption and a similarly worded grant of definitional authority in the Atomic Energy Act. *Id.* at 2263 n.5. The text of companionship exemption, for example, expressly authorizes DOL to "define[] and delimit[]" the term "domestic service employment" through "regulations." 29 U.S.C. § 213(a)(15). This, of course, supports DOL's argument that the *companionship* exemption delegates the agency a degree of discretion. *Cf.*

4

*Mayfield v. DOL*, 117 F.4th 611, 617-18 (5th Cir. 2022). But it undermines DOL's argument about the live-in exemption.

The live-in exemption contains no similar grant of definitional authority, even though it was enacted together with the companionship exemption. When Congress wanted to confer interpretive authority on DOL, therefore, it said so explicitly, as in the companionship exemption. It said nothing of the sort for the live-in exemption, undermining DOL's argument. *See Russello v. United States*, 464 U.S. 16, 23 (1983). Indeed, in DOL's view, the grant of definitional authority is just "additional"—meaning redundant. ECF114, at 18. This surplusage too undermines DOL's reading. *Fischer v. United States*, 144 S. Ct. 2176, 2189 (2024). This textual difference therefore shows that the best meaning of the statute is that courts should follow the APA's default instructions and apply the best reading of the live-in exemption, not depart from it. *Loper Bright*, 144 S. Ct. at 2266.

Second, *Loper Bright* also explains that some statutes delegate broad policy decisions, such as a direction to impose environmental regulations on coal-fired power plants if "necessary" and "appropriate." *Id.* at 2263 & n.6 (citing examples). Those statutes delegate policymaking authority. Congress, however, did not delegate to DOL policymaking authority to rewrite the live-in exemption to disfavor some employers, and not others, if "necessary" or "appropriate" or "in the public interest" or anything of the sort. Rather, it enacted a straightforward exemption that courts can apply without the benefit of any agency rule. This, again, undermines DOL's argument that the live-in exemption is best read to confer agency "discretion."

Whatever the scope of delegations of executive interpretive authority after *Loper Bright*, DOL's argument here cannot possibly be right. DOL's argument for deference would deprive

5

*Loper Bright* of any effect. Generic grants of rulemaking authority, such as § 29(b), are common to virtually every federal agency, and "most statutes." *Gun Owners of Am., Inc.*, 19 F.4th at 918-19 (Murphy, J., dissenting). An equally general provision was at issue in *Chevron*. See 42 U.S.C. § 7601(a)(1) ("The Administrator is authorized to prescribe such regulations as are necessary to carry out his functions under this chapter."). So too in *Loper Bright*. Br. for Respondents at 2-3, *Loper Bright*, 144 S. Ct. 2244 (Sept. 15, 2023) (No. 22-451) (citing 16 U.S.C. §§ 1854(a)(3), (b)(3); 1855(d) (authorizing the agency to adopt "such regulations … as may be necessary" to carry out a plan or "any other provision" of the Act)), http://tinyurl.com/rnm44d98.

If the courts on remand in *Loper Bright* can simply scrub references to *Chevron*, cite the general rulemaking provision, and reaffirm, all without ever deciding the best meaning of the statute, then one wonders what the fuss over *Loper Bright* was all about. *Cf.* 144 S. Ct. at 2295 (Kagan, J., dissenting) ("In one fell swoop, the majority today gives itself exclusive power over every open issue—no matter how expertise-driven or policy-laden—involving the meaning of regulatory law."). Indeed, if DOL were right, then the Supreme Court should not have overruled *Chevron* since the rule upheld in that case was promulgated under EPA's general grant of rulemaking authority in the Clean Air Act.

Even more, DOL's view, apparently, is that *Loper Bright* requires *more* deference than *Chevron*. Before *Loper Bright*, a grant of general rulemaking authority was a precondition for *Chevron* even to apply. Now, according to DOL, such a grant alone commands judicial loyalty to executive interpretations. Of course, that is wrong.

The nonbinding cases cited by DOL fail to back up its argument about the scope of *Loper Bright*. In *Schaffner v. Monsanto Corp.*, the Third Circuit noted in a passing footnote that

6

*Loper Bright* did not deprive the EPA of its general ability to issue misbranding regulations implementing the statutory scheme. 113 F.4th 364, 381 n.9 (3d Cir. 2024). The Third Circuit, however, also noted that "*Loper Bright* requires courts, not agencies, to determine the meaning of statutory terms such as 'misbranding.'" *Id.* That nonbinding passing footnote therefore only undermines DOL's argument. And in *Mayfield*, the Fifth Circuit considered a DOL rule that relied upon "an uncontroverted, explicit delegation of authority" that precisely mirrors the grant of definitional authority in the companionship exemption, which the live-in exemption conspicuously lacks. 117 F.4th at 617 (citing 29 U.S.C. § 213(a)(1) ("any employee employed in a bona fide executive, administrative, or professional capacity … as such terms are defined and delimited from time to time by regulations of the Secretary.")). *Mayfield* did not address whether a grant of general rulemaking authority authorizes judicial deference. That case came up later, and the Fifth Circuit (in an opinion written by the same judge who wrote *Mayfield*) firmly rejected this notion in no uncertain terms, interpreting the FLSA without deference to DOL. *See Rest. L. Ctr.*, 2024 WL 4609380, at *1, *4.

DOL's argument for deference had a name—*Chevron* deference—and it has been overruled. DOL's argument for continued deference as to the scope and meaning of the live-in exemption therefore conflicts with *Loper Bright*.

**B. *Coke* is inapplicable to the live-in exemption**

In the alternative, DOL also tries to make something out of *Coke* and stare decisis. *See* ECF114 at 1-2, 13-22. As DOL sees it, "*Coke* recognized the Department's Congressionally delegated discretionary authority to determine whether third party employers may claim the companionship services, and *by extension* the live-in domestic service employee, exemptions." *Id.* at 13 (emphasis added).

7

DOL's request for an "extension" of precedent gives up the game. Stare decisis never requires courts to "*extend* precedent" to another statutory provision. *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 817 (6th Cir. 2015). That is especially true when a large part of *Coke*'s rationale and methodology—the *Chevron* deference framework—has been overruled. *See Coke*, 551 U.S. at 162, 165 (applying *Chevron* deference). As a matter of stare decisis, *Loper Bright* explains that courts must continue adhering to *Coke*'s limited, core holding that the "specific agency action" at issue—the 1975 regulation—was valid and binding. 144 S. Ct. at 2273. That core holding, though, provides no cover or support for a different specific agency action (the 2013 regulation that says the opposite), interpreting a different statutory provision (the live-in exemption).

*Coke*'s reasoning also cannot logically be extended to the *live-in* exemption. *Coke* turned on one "gap" in the FLSA: the term "domestic service employment" in the companionship exemption. *Coke*, 551 U.S. at 166. The live-in exemption does not use that term. *See* ECF113-2, at 15. DOL does not respond to this point, because it has no response. The Supreme Court in *Coke* also made clear that the 1975 regulation's interpretation was valid because "Congress intended its broad grant of *definitional authority* to the Department to include the authority to answer these kinds of questions" about the scope of the companionship exemption. *Coke*, 551 U.S. at 168 (emphasis added). The live-in exemption, as mentioned, contains no similar delegation of definitional authority, and so *Coke* cannot be extended there. *See* ECF113-2, at 15-16.

To make up for the lack of textual similarity, DOL relies heavily upon *Coke's* passing citation to § 29(b), the general rulemaking grant in the 1974 amendments. But *Coke* cites the general grant of rulemaking authority only once as a secondary citation toward the beginning

8

of the analysis, when explaining the *Chevron* framework that has since been overruled by the Supreme Court. *Coke*, 551 U.S. at 165. To the extent *Coke* relied upon the general rulemaking authority, therefore, it did so because that might have been good enough to presume an implied delegation of interpretive authority under *Chevron*. But that provision no longer suffices. *See supra* Part I.A.

The D.C. Circuit decision that DOL relies upon is also unpersuasive after *Loper Bright*. The D.C. Circuit applied *Chevron*. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1089-90 (D.C. Cir. 2015) ("*Home Care III*"). The Court should not follow out-of-circuit precedent that rests upon an interpretive methodology repudiated by the Supreme Court. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534-36 (2022).

## II. DOL's Rule Excluding Third-Party Employers from the Companionship Exemption Is Unlawful

### A. The companionship exemption is not a blank check

Although the companionship exemption delegates definitional authority to DOL, that delegation has limits. "Where, as here, Congress has clearly delegated discretionary authority to an agency, [the Court] must … 'independently identify and respect [constitutional] delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA.'" *Mayfield*, 117 F.4th at 617 (quoting *Loper Bright*, 144 S. Ct. at 2268).

The companionship exemption gives DOL the authority to "define[]" and "delimit[]" the terms of the exemption. 29 U.S.C. § 213(a)(15). The first step here, then, is for the Court to give the best reading to these terms. "'Define' means to 'set forth or explain what a word (or expression) means.'" *Mayfield*, 117 F.4th at 618 (quoting *Define*, Oxford English Diction-

ary (3d ed. 2015)). "'Delimit' means to 'mark or determine (a limit or boundary)' of something." *Id.* (quoting *Delimit*, Oxford English Dictionary (3d ed. 2015)). This makes good sense in context, as many of the statutory terms are open-ended. How serious must someone's difficulties be for them to count as "unable to care for themselves"? What is the right line between providing "babysitting services" "on a casual basis" versus a non-causal basis? These decisions go in the first instance to DOL.

The core problem here is that DOL's rule does not explain or limit any of the statutory "terms" in the companionship exemption. What term is DOL defining or delimiting when excluding an entire class of disfavored employers? DOL does not say. That may explain why DOL has waived reliance on this delegation, claiming it is irrelevant.ECF113-2, at 20.

Worse, DOL's rule also "creates a paradox that is not obviously capable of resolution." *Rest. L. Ctr.*, 2024 WL 4609380, at *7. The domestic service exemptions apply to the "employee," not to the particular employer. 29 U.S.C. § 213(a)(15), (b)(21). Under DOL's rule, however, an employee is paradoxically exempt and not exempt at the same time. As the rule explains, third parties who are joint employers "may not avail themselves" of the exemptions. 29 C.F.R. § 552.109(a), (c). But "the individual or member of the family or household, even if considered a joint employer, is still entitled to assert" them. *Id.* That means the same employee is exempt, and not exempt, at the same time. That cannot be a proper use of discretionary authority. "[A] statute is not a chameleon. Its meaning does not change from case to case." *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013) (Sutton, J., concurring).

DOL explains that sometimes the FLSA distinguishes "rights and obligations … depending on the nature of the employer." ECF114, at 17. For instance, DOL points out that

10

minimum wage and maximum hour laws do not apply to some amusement parks or religious conference centers, depending on their average receipts over a six-month period. 29 U.S.C. § 213(a)(3). But this just shows that when Congress wanted to create some carveouts for particular employers, it knew how to do so. *See Russello*, 464 U.S. at 23. Here, nothing in the FLSA's text indicates that Congress approved of such a bizarre and paradoxical reading of the exemption.

### B. DOL's rule violates the "major questions" doctrine

DOL argues that the rule is not major because it is not economically significant. But DOL itself admitted that the 2013 regulation "is economically significant," and "will have a significant economic impact on a substantial number of small entities." 78 Fed. Reg. 60,454, 60,497 (Oct. 1, 2013). According to DOL, only "billions" will do. Doc. 114, at 21. But that standard is readily satisfied by the regulations: "$210.2 million" a year in wealth transfers sums up to billions rather quickly. *Id.* By DOL's own estimate, the rule has already cost billions in forced wealth transfers.

In political terms, DOL's rule involves the tell-tale sign of a major-questions case: a "frustrated" President endeavoring to "work around" Congress with aggressive re-interpretations of old statutes. *West Virginia v. EPA*, 597 U.S. 697, 743-45 (2022) (Gorsuch, J., concurring) (cleaned up). Proving the point, Congress six times "decline[d] to enact similar measures" to the 2013 rule, then the agency seized the power for itself. *Id.* at 732 (majority op.); *see* ECF113-2, at 18. And in historical terms, the 2013 regulation reversed three decades' worth of agency interpretations, claiming "'unheralded [regulatory] power'" over third-party employers. *West Virginia*, 597 U.S. at 724; *see* ECF113-2, at 2-8. To the extent that deference comes into play here, it is to the 1974 regulation that the 2013 rule supplanted. *Loper Bright*,

11

144 S. Ct. at 2262 ("interpretations issued contemporaneously with the statute at issue, and which have remained consistent over time, may be especially useful in determining the statute's meaning").

DOL argues that Congress's failure to overcome a Senate filibuster and a presidential veto to repeal the rule shows the 2013 Rule isn't "controversial." ECF114, at 22.[1] This would mean all agency rules, including the 2015 Clean Power Plan struck down in *West Virginia*, are not "controversial." That is not how the major-questions doctrine operates. As with the Clean Power Plan, President Obama endorsed the 2013 Rule because he couldn't "wait for Congress to act": in other words, his legislation was too controversial to obtain enough support in Congress. The White House, Press Release, *We Can't Wait* (Dec. 15, 2011), https://perma.cc/H8EM-H3QS.

Finally, the *Mayfield* decision provides no help to DOL. That case involved a challenge to DOL's regulation setting a minimum-salary requirement for an exemption applicable to professional employees. 117 F.4th at 614-15. But that regulation looks quite different from this one. Far from claiming a new power, the minimum-salary regulation tracked DOL's longstanding interpretation, as it had relied on a minimum-salary requirement "continuously since 1938." *Id.* at 617. Relatedly, there was no need for DOL to "work around" Congress—DOL already had exercised the power it claimed in the past. Thus, the Fifth Circuit was correct in noting that *Mayfield* was *not* "a case in which the agency newly uncovers power that conveniently enables it to enact a program that Congress considered and rejected multiple

---

[1] Members of Congress have introduced bills to repeal the rule. One was introduced this year. *See* Rep. Tim Walberg, Press Release, *Walberg Introduces Bill to Help Ensure Elderly Have Access to Affordable Companion Care* (Jan. 25, 2024), https://perma.cc/9V62-X79C.

12

times." *Id.* (cleaned up). This case involves just such a suspiciously convenient sudden discovery of new power.

### III. DOL's Rule Excluding "Care" from the Companionship Exemption Is Unlawful

Unlike when it excluded third party employers, DOL's revised definition of "companionship" at least attempted to define a statutory term, as the definitional authority contemplates. But in doing so, DOL exceeded its discretion. *See* ECF113-2, at 24.

According to DOL, because the homecare industry has thrived under the exemptions and homecare workers now can earn a living, this "warranted an update to the definition." ECF114, at 27. Congress, DOL claims, wanted to cover all employees whose "vocation" is domestic service. *Id.* at 29. But if that were true, Congress would have limited the exemption to those who provide companionship "on a 'casual basis,'" as it did with babysitters. *Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123, 129 & n.7 (D.D.C. 2015) ("*Home Care II*"). Moreover, DOL's demotion of care was not necessary to exclude career nurses, which weren't "companionship services" before the 2013 Rule. *See* 40 Fed. Reg. 7,404, 7,405 (Feb. 20, 1975), *codified at* 29 C.F.R. § 552.6 (1976) (excluding services that must be performed by "trained personnel, such as a registered or practical nurse"). DOL's new definition of companionship instead targets primarily low-skilled home care workers who use Medicaid to care for relatives and neighbors in their homes, not professional nurses. A father who quits his day job to care for an "adult, physically disabled son" wouldn't be providing "companionship services" as defined by DOL, even though home care is not his chosen profession, let alone a vocation. 78 Fed. Reg. at 60,488.

DOL next argues that at least one and perhaps even two out of 535 Members of Congress analogized companions to babysitters. ECF114, at 29. But the statements of just two out

13

of 535 legislators do not suffice to show that a majority in Congress and the President agreed with that understanding of the legislation. No one votes on floor statements, not even a congressional committee. That is why "floor statements by individual legislators rank among the least illuminating forms of legislative history." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017). But in any event, DOL "does not seem to realize ... that this analogy actually supports" Defendants' argument and undercuts the rule. *Home Care II*, 78 F. Supp. 3d at 129. As Judge Leon explained:

> Babysitters—good ones, at least—do not simply sit and stare at their charges, ready to call for assistance if something should go wrong. And their duties can extend far beyond playing games or making conversation. Babysitters provide care—assistance with activities of daily living and instrumental activities of daily living—to the extent the children they are watching are unable to care for themselves. A babysitter, particularly one sitting for an infant or toddler, often is responsible for feeding, bathing, and changing the clothes and diapers of the child.… If the Department believes otherwise, its staff needs to spend some more time with children!

*Id.*

Finally, DOL tries to duck the question. First, DOL claims that Defendants lack standing to raise this argument. Because Defendants are third-party employers who categorically cannot rely on the companionship exemption, DOL asserts, the change in the companionship causes Defendants no injury. But of course, Defendants argue that they *can* rely on the companionship exemption. *See supra* Part II. If that is right, then DOL's standing objection falls away. *Cf. Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 194 (3d Cir. 2004) (Alito, J.). Second, DOL claims that Defendants waived this argument by failing to raise the companionship exemption as a defense in their answer. That is untrue. Defendants repeatedly claimed that their employees are exempt under the companionship exemption, in their answer as well as their

14

summary judgment motion. ECF42 ¶¶ 11-12; ECF113-2, at 17-18. Some fraction of Defendants' employees' work involves "care" that, under a proper interpretation of the statute, would fall within the companionship exemption, just as Defendants have asserted all along.

### IV. DOL's Rule Is Arbitrary and Capricious

DOL failed to consider that by forcing homecare agencies to pay considerably more for overtime while leaving their reimbursement rates under Medicaid fixed and unchanged, the agencies would cap hours, harming homecare aides along with the patients they care for. ECF113-2, at 25-26. By ignoring this important aspect of the problem, DOL acted arbitrarily and capriciously.

DOL pushes back, pointing to places in the record where DOL gestured towards the possibility that the rule would hurt workers and patients by lowering compensable hours. ECF114, at 24. But an agency must do more than "acknowledge[] the concern and move[] on." *Louisiana*, 90 F.4th at 473. And yet, that is all DOL did. None of DOL's economic estimates or scenarios "reflect possible offsetting effects related to employees who[,] … as a result of the rule, experience a reduction in their scheduled hours and thus in their compensation." 78 Fed. Reg. at 60,547.

DOL identifies only one place in the record where DOL acknowledges that this predictable effect could harm patients too, and even then, it recognized only that it could have "short run" consequences. ECF114, at 24. DOL never considered whether these consequences could be long-lasting. Yet, in the wake of the rule change, patients have been harmed permanently: some states cut their home care programs altogether or at least reduced hours. *See* ECF113-2, at 26-27.

## CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment to Defendants.

Dated: November 5, 2024

| | |
|---|---|
| /s/ McArdle Booker | /s/ Jonathan Berry |
| Michael E. Hooper (0073188) | Jonathan Berry |
| *Trial Attorney* | Michael B. Buschbacher |
| Bruce C. Fox (PA 42576) | James R. Conde |
| McArdle Booker (PA 209470) | BOYDEN GRAY PLLC |
| OBERMAYER REBMANN MAXWELL & HIPPEL LLP | 800 Connecticut Ave. NW Suite 900 |
| 525 William Penn Place, Suite 1710 | Washington, DC 20006 |
| Pittsburgh, PA 15219 | (202) 955-0620 |
| (412) 566-1500 | jberry@boydengray.com |
| michael.hooper@obermayer.com | mbuschbacher@boydengray.com |
| bruce.fox@obermayer.com | jconde@boydengray.com |
| mcardle.booker@obermayer.com | |